***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 *********** ORDER
Plaintiff filed a Motion to Dismiss due to defendants' failure to timely file a brief and Form 44 Application for Review. Defendants did not file a brief or Form 44 until 5 August 2003, the date of hearing before the Full Commission. In the discretion of the Full Commission, plaintiff's motion is hereby DENIED in that defendants only appealed from the Deputy Commissioner's average weekly wage determination. The Full Commission on its own motion is reviewing the Deputy Commissioner decision to terminate plaintiff's temporary total disability compensation as of the date of the 2 February 2003 Opinion and Award from which neither party appealed.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit # 1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 5 November 2000.
3. North Carolina Insurance Guaranty Association is the carrier on the risk.
4. Plaintiff's average weekly wage is at issue.
5. Plaintiff's medicals are admitted into evidence as Stipulated Exhibit # 2.
6. The following Industrial Commission Forms and Orders are admitted into evidence: Forms 18, 19, 25N and a Form 33 filed by defendants, as well as any Orders in the file, as Stipulated Exhibit # 3.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 43 years old at the time of the hearing before the Deputy Commissioner and had completed high school. On 5 November 2000 plaintiff was employed as a long distance truck driver for defendant-employer. Plaintiff's prior work history includes being a fireman/emergency medical technician from 1980 to 1981, a milk truck driver for four years, a meat packer for ten years and work at a lumberyard. In 1990 he attended truck-driving school.
2. On 5 November 2000, plaintiff was involved in an admittedly compensable injury by accident while driving an 18-wheeler truck for defendant-employer. Plaintiff was in Arizona en route from California to Raleigh, North Carolina. Plaintiff's fiancé was his co-driver. While plaintiff was driving, he ran his truck into the back of another vehicle. Plaintiff lost control of his truck, causing it to roll over onto its side, slide across the road and come to rest in a field. Following the motor vehicle accident, plaintiff received treatment at the local hospital emergency room, where he complained of low back and neck pain and had minor abrasions. After an examination in the emergency room, plaintiff was released without being admitted. Defendants did not file a Form 21 or Form 60 with respect to this case, but they did begin paying temporary total disability compensation to plaintiff beginning on 10 November 2001.
3. Plaintiff and his fiancé returned to North Carolina on 13 November 2000. Plaintiff sought treatment from Dr. Kenneth Carter, his family doctor. Plaintiff reported low back and neck pain, stiffness and he had multiple contusions on his extremities. Dr. Carter prescribed medications and instructed plaintiff to return in five days for follow-up. Plaintiff saw Dr. Carter on 17 November 2000 and Dr. Carter continued the previous medications. Dr. Carter recommended that plaintiff return in one week for a "final evaluation".
4. On 24 November 2000, Mark Eldridge, Dr. Carter's physician assistant, examined plaintiff and released him to return to work with restrictions of no lifting, pushing or pulling greater than 20 pounds, no prolonged standing and no working above shoulder height or overhead.
5. Plaintiff returned to Dr. Carter on 29 November 2000 with continuing complaints and physical therapy was recommended. Dr. Carter continued to treat plaintiff with medication and recommended physical therapy. On 18 January 2001, Dr. Carter's physician assistant recommended that plaintiff be referred for an orthopaedic evaluation.
6. On 29 January 2001 plaintiff was examined by Dr. Leonard Nelson, an orthopaedic surgeon. Dr. Nelson recommended steroid injections. After two injections, Dr. Nelson ordered an MRI. Due to plaintiff's size, the MRI could not be performed. On 3 April 2001, a myelogram/CT scan was performed, and the findings indicated that plaintiff did not have any evidence of a focal disk herniation or spinal stenosis and there was no definite extradural defect noted on the lumbar myleogram. Dr. Nelson recommended a functional capacity examination (FCE) on 9 April 2001.
7. On 16 April 2001, plaintiff underwent a functional capacity examination. Plaintiff was rated as capable of performing light to medium work. However, the results of the FCE were noted to be "equivocal" due to "partial submaximal effort" and inappropriate illness behavior on the part of plaintiff. The results did not indicate symptom magnification. Plaintiff demonstrated limited ability in repetitive activities of squatting, stair climbing and material handling and poor cardiovascular fitness. Plaintiff reported a high level of pain throughout testing, but he did not demonstrate severe functional limitations.
8. On 7 May 2001 Dr. Nelson released plaintiff to return on an as-needed basis. At this time Dr. Nelson was of the opinion that plaintiff was at maximum medical improvement and that he had a 10% permanent partial impairment to his back. Dr. Nelson further opined that plaintiff could return to work with restrictions as noted in the FCE report which recommended that plaintiff could safely lift ten pounds frequently, three pounds constantly and up to 24 pounds occasionally; sit up to 45 minutes with ten minute breaks; climb stairs up to two flights every ten minutes and perform other physical tasks as noted on the FCE. Plaintiff did not return to Dr. Nelson after 7 May 2001. Plaintiff informed defendant-employer that he was ready to return to work, but defendant-employer had filed bankruptcy and there was no work available.
9. Plaintiff thereafter sought medical treatment from Dr. David Miller. On 26 July 2001, Dr. Miller examined plaintiff and reviewed the results of the myelogram. Dr. Miller agreed plaintiff retained a 10% permanent partial impairment of his spine and did not recommend further treatment.
10. Plaintiff has not received any medical treatment since the release by Drs. Nelson and Miller. At the time of hearing before the Deputy Commissioner, he was only taking aspirin as medication.
11. In January 2002, defendants employed Ted Sawyer, Jr., a vocational rehabilitation specialist, to perform a labor market survey only. In January 2002 and March 2002, Mr. Sawyer completed the labor market survey reports which identified a number of positions in Wilson, North Carolina, that were within plaintiff's physical restrictions. At the time of Mr. Sawyer's January 2002 labor market survey, he had not met with plaintiff and had been given limited information. His March 2002 addendum to the labor market survey was based upon information gathered through interviewing plaintiff. Mr. Sawyer also reviewed the FCE, but appeared to have based his labor market survey on a lifting restriction of 40 pounds, which was in excess of the "Safe Recommended" and the "Qualified" physical demand levels contained in the FCE. Therefore, little weight is given to his findings. When conducting the labor market survey, Mr. Sawyer appeared to be working solely as an agent of defendants.
12. In April 2002, however, defendants employed Mr. Sawyer to provide direct vocational assistance to plaintiff. Over the course of providing vocational rehabilitation assistance to plaintiff, Mr. Sawyer and his colleagues were able to identify 35 to 40 jobs, which they determined to be within plaintiff's restrictions and compatible to his interests. Mr. Sawyer was able to document only four or five jobs for which plaintiff had applied. There is insufficient evidence in the record from which to determine whether these jobs were within plaintiff' restrictions or whether he could reasonably be expected to obtain one of them. There is also insufficient evidence from which to determine if plaintiff has constructively refused suitable employment by failing to cooperate with reasonable vocational rehabilitation.
13. Plaintiff applied for approximately 45 jobs on his own before Mr. Sawyer began working with him.
14. As all of Mr. Sawyer's efforts to assist plaintiff in finding suitable employment occurred after the hearing before the Deputy Commissioner, plaintiff has not had an opportunity to present evidence on his cooperation with job search efforts while working with Mr. Sawyer.
15. Defendants filed the request for hearing in order to obtain permission from the Commission to terminate compensation to plaintiff on the ground that plaintiff is no longer disabled. The Deputy Commissioner allowed defendants to terminate compensation. The Full Commission is reopening and remanding this case for additional testimony from plaintiff on his efforts to find suitable employment after vocational rehabilitation was provided following the hearing before the Deputy Commissioner. In the interest of fairness, the Deputy Commissioner's termination of benefits as of the date of her Opinion and Award should remain in effect at this time, pending receipt of further evidence. Also, as defendants did not appeal from the Deputy Commissioner decision on this issue, the only issue upon remand is whether plaintiff is entitled to temporary total disability compensation after 5 February 2003.
16. Plaintiff was paid temporary total disability compensation at a weekly rate of $369.25. This amount was set by defendants without a Form 22 or any explanation as to how the figure was determined. Plaintiff had just started working with defendants on the date of injury. Plaintiff was to receive $800.00 per run from Raleigh to California "out of season" and $900.00 for each "in season" run. The agreement was to run three to four trips per month. This yields an approximate salary of $2,400.00 to $3,600.00 per month. No other evidence concerning wages was introduced. In order to be fair to the parties, plaintiff's wage should be averaged. Plaintiff's wage was $3,000.00 per month which equals $36,000.00 per year. When divided by 52 weeks, plaintiff's average weekly wage was $692.31. This yields a compensation rate of $461.56 per week. There is a $92.31 difference between what defendants have paid since the accident and the fair and just compensation rate computed above. Defendants provided no documentation to support the compensation rate of $369.25.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. It is more fair and just to both parties for plaintiff's average weekly wage to be determined based on an average of three to four trips per month at the rate of $800.00 to $900.00 per run, which yields an average weekly wage of $692.31, and a compensation rate of $461.56 per week. N.C. Gen. Stat. § 97-2(5).
2. As a result of his injury by accident, plaintiff became temporarily totally disabled on 5 November 2000 and is entitled to temporary total disability compensation at the weekly rate of $461.56, beginning on 5 November 2000 and continuing through the date of the Opinion and Award of the Deputy Commissioner. N.C. Gen. Stat. § 97-29. Plaintiff's entitlement to further temporary total disability compensation is reserved for subsequent determination.
3. Continuing vocational rehabilitation assistance is reasonably required to lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
4. As a result of defendants' underpayment of temporary total disability, plaintiff is entitled to an additional $92.31 per week from 5 November 2000 through the date of the Opinion and Award of the Deputy Commissioner on 5 February 2003.
5. Plaintiff is entitled to medical treatment as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff' period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability benefits at her compensation rate of $461.56 per week from 5 November 2000 through the date of the Opinion and Award of the Deputy Commissioner on 5 February 2003. Defendants shall receive a credit for those amounts already paid. Those amounts which have accrued shall be payable in a lump sum.
2. A reasonable attorney's fee of 25% of the amount due plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical costs incurred or to be incurred in the future which are related to plaintiff's compensable injury by accident.
4. Plaintiff's entitlement to permanent partial disability based on the 10% rating to his back is reserved until the Full Commission receives evidence on plaintiff's entitlement to additional temporary total disability compensation.
 5. Defendants shall pay the costs due this Commission. ORDER
The record in this case is hereby reopened and the case is remanded to the Deputy Commissioner for presentation of further evidence regarding plaintiff's entitlement to temporary total disability compensation after 5 February 2003. The additional evidence shall be forwarded to the Full Commission for further determination.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
BSB/md